which is United States v. the Bickarts. Mr. Lange. May it please the court, counsel. My name is Courtney Lange and I represent the United States v. the Bickarts. I have three issues on appeal related to his sentencing. He contests his enhancement for sophisticated means and raises two issues related to supervised release. And given the brevity of time, I would begin by welcoming any questions that the court may have. You're going to get him whether you want him or not, so go ahead. Just take it. Okay. Well, we believe Mr. Bickart presents that this was routine, everyday tax fraud and that the sophisticated means enhancement should not be applied. Everyday tax fraud is fairly sophisticated as far as I can tell. Even without fraud, it's sophisticated. We've just finished working on our income tax return. I'm here to say that I consider it sophisticated no matter how I approach it. Even if you're not trying to cheat anybody. There's no question that there's some meticulousness required in preparing tax returns. But I would... Preparing false tax returns strikes me as being a requirement that it be sophisticated. Well, this court has said that the concealment inherent in tax fraud must be distinguished at efforts in concealment over and above the concealment inherent that make the fraud more difficult to detect. The district court at sentencing referred to this as common everyday tax fraud. And the IRS has identified the filing of false forms 1099-OID as one of the most common tax scams in recent years. If we compare Mr. Bickart's case to a case that upheld sophisticated means based on the filing of false forms 1099-OID, we can see that the IRS has identified the filing of false forms. We see that his actions fall far short of what this court has typically upheld. The application notes two sophisticated means give three examples. They say that sophisticated means applies if there is the hiding of income through the use of corporate shells, offshore accounts, or fictitious entities. I think it's notable in this case that none of those three examples existed. The majority of this court's cases actually cite those examples and involve those examples. However, we are also told that that list is not exhaustive. And so I think we need to look at the precedent I mentioned. Is there an additional layer of concealment here that made the fraud more difficult to detect? And I would argue that there was not. The filing of the false 1099-OID forms were part and parcel of the tax fraud itself. Unlike the MATIC case, which involved the filing of false tax forms by a tax professional, this case involved one false tax return for one year from one household. The MATIC case was far more extensive in that it involved the use of 88 false individual income tax returns using false Social Security numbers of others, unwitting clients, the dead, the young. In this instance, the false refund... That's correct. Just because we can imagine a more sophisticated scheme doesn't mean that this was not sophisticated. However, I would present to this court that the filing of one false income tax return for one tax year where the refund, the false refund itself, was to be paid directly to the defendant, there's not a sufficient level of concealment that will warrant the application of this enhancement. Ms. Lange, didn't your client tell the IRS that this took six months of planning and research? My client, in the context of the August 2011 interview, explained that this took six months of planning and research. However, the district court did not mention that in its findings and those facts were never found reliable. He also mentioned that he searched a website in order to come up with this scheme. So I'm not sure that we can rely upon the fact that it took that long to develop this scheme. If this court has no further questions, I see my time has expired. Thank you very much. Thank you. Mr. Owens? May it please the court? Excuse me. Derek Owens on behalf of the United States. The case incorporated the enhancement for sophisticated means in sentencing the defendants in this case. And that's because first, the court determined that the defendants used nine different fraudulent forms purportedly from financial institutions to further their fraud and to support the tax return that they had separately filed with the IRS. And second, the district court found that their conduct was planned and methodical. It was calculated and it was a concerted effort that took a lot of work to defraud the United States and receive money that they were not entitled to. The accounts that they used in furtherance of the fraud were based on some credit lines that they established with different financial institutions and therefore further concealed the aspect of the fraud in that these were real accounts that were actually in existence. And the crime in itself, as the defendant has noted, was regarding one tax return and nine separate OID forms. But the crime here is clearly more sophisticated than some of the other ones that this court has upheld in finding that an authority, the defendant there, used business bank accounts essentially for his own personal reasons and didn't report that to the IRS, essentially evading reporting requirements to the IRS. In this case, there were affirmative representations, fraudulent representations made to the IRS and they used fraudulent financial instruments to further that fraud and to actually obtain money from the government rather than just evading reporting requirements that are common in tax evasion cases. Similarly, in Contney, in that case, it was a business owner who essentially wrote out separate checks for his employer's actual wages and separate checks for the overtime wages. And in doing so, evaded reporting requirements for the I can move on to the supervised release conditions now at this point, Your Honors, if that's fine. The supervised release conditions imposed by this court, or I'm sorry, by the district court, were not plainly erroneous and they did not abuse the discretion of the courts. What I find, I find the condition that allows the probation officer to visit the probationer at work, I find that, I can't quite see how that works. I mean, this probation officer, he has to get permission to enter a business, whatever, to go see a worker. You don't just barge into a factory or an office. You have to get permission. So, what does he say to the boss? What does the probation officer say? Well, the point of supervised release is to rehabilitate the defendant, and as the district court noted I know. My question is much more, I just don't visualize quite what it looks like when the probation officer walks in and says to a supervisor or the boss or something, I'm a probation officer, I want to talk to one of your employees because he's on probation. Is that the conversation that takes place? I think it depends. I don't mean to be evasive, but I think it depends a lot on what type of occupation they're working at. Jolene Becker worked at a large law firm here in Chicago as the human resources chief, and walking into that business would be much different than walking into an occupation where maybe somebody does some painting outside for a small crew, and you want to talk to the crew leader, who's his boss. Do the probation officers ever take advantage of this brilliant maneuver? I haven't seen this type of thing taken advantage of. It's just in there in case the probation officer wants to use it, you mean. And that's what the district court actually noted. It has no real effect, it's just that they're in case. Keep behaving yourself because we're watching. Essentially, that has a lot to do with it, Your Honor, because the goal of supervised release is to rehabilitate the offender. At least you've outlined a purpose. I agree, Your Honor. May I just worry about the effect on a person's employment if his boss is interrogated by a probation officer? A different issue, I think. That is a fair concern. In this case, I think an overriding concern was, number one, making sure they're employed, and number two, getting accurate verification of that employment. And in this case, the defendants can't be relied on to self-report with pay stubs. They've already submitted false forms to the federal government. In this case, the facts of this case call for something more. In this case, it's warranted for the probation officer to go directly to the employer. I see my time has expired. If there are no further questions, we ask that the district court sentence be affirmed. Thank you. Thank you, Mr. Dorn. Ms. Lang, do you have anything further? Or Mr. Hillis. Thank you, Your Honor. With respect to the duration of the planning, I'd like to make an observation that tax filings are due once a year unless you pay quarterlies. The reason why this takes six months is because April 15th rolls around once a year. Furthermore, my client, Jarlene Bicker, was not involved in the six months of planning, so to the extent that we can hang our hats on that as a feature of the sophistication, it certainly doesn't apply to Jarlene Bicker. This is garden variety tax fraud. What needs to separate it from something to make it sophisticated means are the factors that are outlined in comment five to the applicable guideline, and that just didn't happen here. In the relevant case law, Cotney, Wu, Fife, Hams, O'Doherty, none of those features in those cases with multiple accounts, multiple countries, corporate shells, none of that applies here. This is not sophisticated. This required a stamp and a form, both of which are readily accessible, available, and were used here. False information is not anything that required. Any dummy could have done this, huh? I think anybody with a pencil and anybody with a form. That could include a dummy, I assume. Didn't require an accountant, didn't require shell corporations, all the features that are present in the other cases that we cite. So far as the conditions and such, they're supposed to be the least restrictive manner that you can accomplish the goal. And so instead of going into a person's place of employment, pick up the telephone, call the employer, and see if you're still working there. If you can't trust these people to self-verify through sending forms, there's another manner that's less intrusive that could be used. There are then problems with the length of supervised release that was chosen. The government said it would be arbitrary for us to attack it in the way that we have, but there have to be reasons given. Same thing for the vagueness concerns that they have. If they think that one of our suggestions to give a percentage of income for material change or things along those lines are arbitrary, we'll accept that as a criticism. But at least it's definite, and that's what we need in these conditions. To avoid vagueness and overbreath, we need something that is firm, and we've at least tried to suggest something. I think that the district court could easily fashion things to alleviate those concerns, but our primary concern, of course, is the length of time, and if the sophisticated means enhancement doesn't apply, the sentence would be lowered. That is plain error in our view. We've cited cases to say that a miscalculation of the guidelines is plain error. We think that this is not a case that sophisticated means should have applied, and the district court's reasoning and its findings weren't especially rigorous, so we ask that this get remanded so that it can address that as well as the supervised release concerns. Unless the panel has questions for me, I have nothing further. Okay. Thank you, Mr. Hillis. Thank you. And we thank the other counsel as well.